[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These issues come to this court in a Motion for Modification dated February 25, 1992, in which the plaintiff father requests that a Family Relations visitation study recommendation, ordered by the court on September 3, 1991, be adopted by this court, and a Motion for Contempt dated February 25, 1992, in which plaintiff father claims, inter alia, "Defendant wife has materially and substantially attempted to interfere with the Plaintiff husband's relationship with his children."
The judgment of dissolution dated May 9, 1991, granted plaintiff father visitation with his children on Wednesday evenings and alternate weekends. On September 30, 1991, mother was ordered to encourage the childrens' visitation with their father.
This court finds father's minor children have not been visiting with him. Jillian, age ten, has avoided her father since December 4, 1991. Jared, age eight, last saw his father on August 8, 1991. Jayce, age six, who had been a regular visitor, has recently begun avoiding his father.
Because of the unusual nature of this case, the decision of the court is addressed to the children, who have been invited to attend the delivery of the decision.
Jillian, Jared, Jayce, I asked you to come to court today CT Page 4688 with your parents because you three children are the most important people in this case. My job is to do what is best for you, not what is best for your mother or your father. So, even though you are young, I want you to be here to hear for yourself what the judge is doing about you and your parents.
I listened carefully to the people your mother and father brought to court before I knew what had to be done. I listened to your mother and your father, your aunt Judy and your uncles Bob and Nick, your school principal, Mr. Graffam, and two of your teachers, Ms. Madigan and Ms. Szafarek, I listened to Ms. Briggs and Mr. Temple. And then I listened to the lawyers. It took four days.
Your mother also wanted me to listen to Patricia Wilcox, the woman you talk to at Klingberg Family Center. I didn't do that. Ms. Wilcox is there to help you and your parents try to talk about your problems and work them out. She is there to help you all get along better. What you tell her is private. Your mother doesn't have to know what you tell Ms. Wilcox. Your father, your brothers and your sister do not have to know. It's so private even the judge shouldn't know. Ms. Wilcox is your private friend. That is why I did not want her to be a witness. I did not want her to tell us what was happening during your private meetings.
When you understand that you can really trust her, and when you tell her the truth about what is really going on, she will be able to help you make things better. I hope each of you will do that — tell her, privately, the truth about what is really going on so that she can help you make things better. I know she will give each of you the chance to talk to her alone, without anyone else in the room.
I also hope you will tell Ms. Wilcox how you feel about what I am saying to you today.
I listened to the Family Relations Officer, Gail Fisher-Brown, too. She is sort of a detective, a trained investigator and evaluator. She works for the State of Connecticut. It is her job to talk to people who have the kind of problems you and your parents have, figure out why there are such problems, and suggest to the judge what to do about them. I listened to her carefully because she knows what she is doing. She is very smart.
After listening to everyone, after studying all the evidence that your mother and father brought to me and after thinking about all the laws that I have to consider, this is what I find: CT Page 4689
Your mother lied to me when she testified here in court. She raised her right hand and she swore that she would tell the truth, the whole truth and nothing but the truth, so help her God. But she did not do that. She lied.
She lied about a lot of things.
She lied to me about the telephone you have at home. When she testified here in court, after swearing to tell the truth, she said there was no telephone. She said that over and over. Your father and your lawyer could not call you. There was no phone at home, she said. She lied. You know that you have a telephone at home. Your mother has had it listed under her maiden name in order to hide it.
What is most important is that she lied to me when she said she wanted you to visit your father. That's not true. She really does not want you to visit your father. She does not like him at all. She feels hurt and angry.
She has done everything she can do to get you to say and think mean things about your father and not visit with him. And you did. One of you actually said you hated him. I do not think you really wanted to say that, but I think you did not want to make your Mother unhappy, so you felt you had to say you hated your father in order to keep your mother happy. That is a very unfair thing to do to you.
Your father loves you — and until this divorce happened, you loved him, too. You played with him and laughed with him and did good things with him. You loved him and he loved you. But then your mother and your father got divorced.
Grown ups can do that. Divorce happens. But just because a mother and a father do not love each other anymore, and get divorced, there is no reason why Jillian and Jared and Jayce should lose their father. You need your father. You need him to help you grow up right. You need his love. You need him to have fun with, to play with, to learn things from. If you lose him, you will have a hole in your life that will hurt you very much.
When mothers are this angry with fathers, it is because they feel hurt. Your mother has to get over that and stop hurting your father and you.
Just because your mother and your father do not get along at the moment, there is no reason why you have to take one of their sides. You have to work hard to be on no one's side: not your mother's side, not your father's side. You can love them CT Page 4690 both and have fun with them both even though they do not get along with each other right now. That's their problem, not your problem. You do not have to take sides. And if one of your parents wants you to take sides, that parent is doing something that is not nice and not fair.
I have seen many, many families where one of the parents is so angry that they want the children to help them hurt the other parent and take sides against that parent. A child should not have to choose between a mother and a father. It's not fair. Lots of children know that it's not fair and do not take sides — and they do just fine. If you refuse to take sides, your mother will learn to live with it. You'll see. It happens all the time. Sometimes children have to teach their parents how to behave.
People have told me that you say you are very angry with your father, that you say you hate him, that you say you do not trust him, that you say you think he lies.
You do not know all the facts. And because you do not visit him, you are not giving him a fair chance. Be fair. See your father. Give him a chance to love you and be loved by you. He needs your hugs. And you need his hugs.
I know that your father has made mistakes. I know he is not perfect. It is alright to be disappointed with him. It is even alright to be angry with him sometimes. It's not alright to hate him and not see him anymore. That's not fair.
Let me tell you some things that you probably do not know.
Your mother and your father, both, together, have what we call joint custody of you. That means that both of them should make decisions about you together. That means that you father should know everything about your schools and your doctors and every other important thing in you life. And he has the right, not just your mother, to help decide about the important things in your life.
The court said that you were to spend every Wednesday night with your father — and every other weekend. Those were the orders of the court. I want you to know that those orders of the court were based on an agreement made by your mother and your father. She agreed. He agreed. So a judge made that a court order. A court order has to be obeyed. Your mother knew that. She knew she had no right to have you stay away from your father. But she was angry with him and she go you to stay away.
She knew she had no right to allow you to decide not to CT Page 4691 see your father. But she was angry with him and she did that. She knew she had no right to take you other places when it was your time to see your father. But she was angry with him and she did that. She knew she had no right to plan fun things you would want to do when it was your time to be with your father. But she was angry with him and she did that, too.
Your mother and your father also agreed not to do anything to make you dislike the other parent. But your mother was angry with your father and got you to dislike him — even though she promised not to and even though a judge made that a court order.
Your father had the right to take you to Misquamicut Beach in Rhode Island. There was no rule that said he could not take you out of state. Your mother said there was but that was not true.
It is not against the rules of this court for you to see your father's new friend, Linda Germano. Your mother made up that rule. Your father is engaged to Linda Germano and may marry her. That's alright. When your mother meets someone she loves, she will be able to marry him and you will have another new friend. You will be able to see him and talk to him and be with him. When people get divorced, if they are lucky, they meet someone else to love. It is perfectly all right for your father to love Linda Germano — and it is perfectly all right for you to meet her and like her, too. Even if it makes your mother angry. You do not have to take sides.
Your mother and your aunt and your uncles have no right to say mean things about your father. They have no right to say mean things about him and get you not to want to see him. They have no right to help you dislike him. Remember that. Your mother promised that she would do nothing, nothing to get in the way of you and your father. And after she made that promise, a judge made it a rule, an order. She disobeyed that rule.
Your mother knew all of those rules. She disobeyed them. She could have obeyed those rules if she wanted to, but she decided that she would do things her own way and that she would interfere with your right to see your father.
There is clear and convincing evidence that your mother wilfully disobeyed the orders of the court.
When you break the rules, when you disobey court orders, you have to pay a penalty. You have to be punished.
Your mother made it necessary for your father to hire a lawyer, Attorney Brian Walsh, and to come to court for four CT Page 4692 days to fight for your right to see him. She made it necessary for your lawyer, Attorney Stephen Mangan, to come to court for four days, too.
I hereby order your mother to pay Attorney Walsh $3500 before September 1, 1992 and to pay Attorney Mangan $3476 before September 1, 1992. I have entered this order to pay your father back for some of the cost to him of your mother's disobedience of the court's orders.
But that is not all. The worst thing your mother did was to get you to dislike your father and to get you to stay away from him. It was not your fault. You were tricked. She told you lies. She told me lies, too, under oath, after swearing to tell the truth. And there are rules against that.
For breaking those rules, your mother has to pay another penalty. She has to be punished. Her punishment will be to go to jail.
But your father has asked me not to do that. All he wants is to be able to see you and to love you. He asked me not to send your mother to jail now. He asked me to please giver her a chance to do what she is supposed to do — giver her another chance to obey the rules and see to it that you three children visit with your father. If the visits take place as they should, then he asked me not to send her to jail at all.
I'm going to do that. I'm going to do what your father asked and give your mother a chance to stay out of jail.
I hereby commit Janet Oparowski to the custody of the Commissioner of Corrections for a total of twelve days, to be served from the morning of Friday, July 3, 1992 until the evening of Sunday, July 5, 1992; from the morning of Friday, July 17, 1992, until the evening of Sunday, July 19, 1992; from the morning of Friday, July 31, 1992 until the evening of Sunday, August 2, 1992; and from the morning of Friday August 14 until the evening of Sunday August 16, 1992.
If Jane Oparowski does everything she is supposed to do, and Jillian, Jared and Jayce visit their father each and every visitation day before the jail dates, those jail dates shall be waived and your mother shall be found to have purged herself of her contemptuous behavior. If not, your mother will go to jail for all twelve days or any part of them that falls after the contemptuous behavior occurs.
It's up to your mother. If she changes her behavior and does what mothers should do, get their children to do what is CT Page 4693 right and proper, she will not have to go to jail. If she obeys the court order to do nothing to interfere with you and your father — and works hard enough to change the things she has already done — she will not have to go to jail.
If any of this happens again, if we straighten this out now, if your mother does the right thing for a while, but the problems start again, I want you to know that the next court, the next judge, may very well deal with the problem by taking you away from your mother and placing you in the custody of your father so that you live with your father instead of your mother.
You and your mother must understand that this is not just a game we are playing. She cannot behave herself for a little while and then go back to doing things the old way.
If this problem happens again, the court is very likely to begin the next hearing by ordering a well respected forensic psychologist or psychiatrist to evaluate your mother, your father and all three of you and to forward the results of that study to this court and to the Family Relations Officer, Gail Fisher-Brown. This court is concerned that the behavior exhibited in this matter may be the result of deeper emotional problems than mere bad manners or simple anger and hurt. The next court should have the benefit of a competent forensic study.
FURTHER ORDERS OF THE COURT:
I. FATHER'S ACCESS
a. When school is in session, all of you will visit with your father every other weekend from Saturday at 10 am until Sunday at 6 p.m. and every Wednesday from 4 pm until 6 pm.
b. When school is not in session, all of you will visit with your father every other weekend from Friday at 3:30 pm until Sunday at 6 pm and every Wednesday from 3:30 pm until 7:30 pm.
c. During summer vacations you will all spend one week with your father from Friday at 3:00 pm until the second Sunday following that Friday at 6 pm for a total of nine days. Your father will choose his summer week during May of each year. Unless he chooses to change the dates after hearing from your mother, the dates he chooses will be your vacation with him.
d. During summer vacation, your father will also have seven additional days which he may add to the beginning or end of any of the regularly scheduled visits that he chooses. Unless he decides to change the dates after hearing from your mother, CT Page 4694 the dates he chooses will be the days you spend with him.
e. Your father will have visits with the three of you on Christmas Eve from 1 pm until 9:30 pm and you will spend Christmas Day with your mother. Thanksgiving will alternate with the three of you being with your father for Thanksgiving in 1992 from 10 am until 8 pm. You will divide Memorial Day, Fourth of July and Labor Day with your mother and your father. If your parents cannot agree how to divide those three holidays, your father will decide the alternating schedule.
f. Father's Day and your father's birthday will be spent with your father from 10 am until 6 pm.
g. You will share your own birthdays with your mother and with your father. If they can work out a schedule they are both happy with, fine. If not, your father will decide what your birthday schedules will be.
h. Your mother is not to schedule any activity to compete with any of your father's visits unless your father approves of them after your mother has discussed them with him.
i. You children are not to be used to carry messages. Your mother will have to learn how to speak directly with your father — and how to speak pleasantly.
j. These visits are minimums, not maximums, and the court expects your father to have more time with you from time to time when good cause or appropriate circumstances arise. As you get along better with your father, you should be able to spend more time with him during your school vacations. And whenever any one of you children decide you want to see your father more, you should be able to do that, even if there is no visit scheduled.
k. Your father can see you and can speak to you in school.
l. Whenever your mother is away from home and needs someone to be with you, she is to first offer your father the job of caring for you.
2. INFORMATION
a. Your father is to know everything about your health, your education and your welfare.
b. The law of the State of Connecticut (46b-56 (e) of the Connecticut General Statutes says: CT Page 4695
 "A parent not granted custody of a minor child shall not be denied the right of access to the academic, medical, hospital or other health records of such minor child unless otherwise ordered by the court for good cause shown."
c. Your mother is to tell all the health, education and other important people in your life, your father's address and telephone number and that he has the right to their information and their reports.
3. TELEPHONE ACCESS
a. Your father can speak to all three of you by telephone at reasonable times and for reasonable lengths of time.
b. No artificial devices, such as answering machines, are to be used to prevent your father from talking to any of you.
c. If your father places his calls at an inconvenient time, your mother will suggest a more reasonable time to him.
d. Each one of you can telephone your father at any time. Should any of you need help in placing the call, you are to get that help.
e. Your father must always know your address and telephone number.
4. ILLNESS
a. Both of your parents can take good care of you.
b. Being sick is not a good enough excuse for not visiting your father unless you are hurt so badly or are so sick that you have to be put in the hospital.
5. COUNSEL FOR THE MINOR CHILDREN
a. Stephen Mangan will continue to be your lawyer.
b. You can talk to him any time you want to.
c. Your lawyer has the right to call you or see you to learn what is happening in your life,
d. Neither your mother nor your father has the right to stop you from seeing or talking to your lawyer.
6. APPEAL CT Page 4696
All these orders will continue to be the orders of the court during any appeal of these orders.
To the extent any of the preceding orders are modifications of previous custody orders of the court, this court finds mother's postjudgment behavior to constitute and uncontemplated material change of circumstances which alters the court's finding of the best interests of the children.
JOSEPH L. STEINBERG